**PANEL DECISION ISSUED AUGUST 16, 2024**
**Nos. 23-7031, 23-7032, 23-7038**

# In the United States Court of Appeals
# For the District of Columbia Circuit

————————————————

NEXTERA ENERGY GLOBAL HOLDINGS B.V., *et al.*,
*Petitioners-Appellees,*

*v.*

KINGDOM OF SPAIN,
*Respondent-Appellant.*

————————————————

9REN HOLDING S.À.R.L.,
*Plaintiff-Appellee,*

*v.*

KINGDOM OF SPAIN,
*Defendant-Appellant.*

————————————————

BLASKET RENEWABLE INVESTMENTS, LLC,
*Petitioner-Appellant,*

*v.*

KINGDOM OF SPAIN,
*Respondent-Appellee.*

————————————————

On Appeal from the United States District Court
for the District of Columbia

————————————————

**BRIEF FOR THE EUROPEAN COMMISSION ON BEHALF OF THE
EUROPEAN UNION AS AMICUS CURIAE IN SUPPORT OF
THE KINGDOM OF SPAIN AND REHEARING EN BANC**

————————————————

Sally L. Pei
R. Stanton Jones
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
sally.pei@arnoldporter.com

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to Circuit Rule 28(a)(1), *amicus curiae* submits this certificate as to parties, rulings, and related cases.

**A.    Parties and *Amici***

In Nos. 23-7031 and 23-7032, apart from the United States, which filed an amicus brief in support of the Kingdom of Spain; the Chamber of Commerce for the United States of America, which filed an amicus brief in support of Appellees; a group of international scholars, which filed an amicus brief in support of Appellees; MOL Hungarian Oil and Gas PLC, which filed an amicus brief in support of Appellees; and Blasket Renewable Investments LLC, which filed an amicus brief in support of Appellees, the parties and *amici* to the case are listed in the brief for Appellees in *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 23-7031.

In No. 23-7038, apart from the United States, which filed an amicus brief in support of the Kingdom of Spain; and the Republic of Croatia, which filed an amicus brief in support of the Kingdom of Spain, the parties and *amici* to the case are listed in the brief for Appellant in *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 23-7038.

**B.    Rulings under Review**

References to the rulings under review appear in the brief for Appellant

in *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 23-7031, and the brief for Appellant in *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 23-7038.

### C.    Related Cases

These cases have not previously been before this Court. No. 23-7031 was previously before the district court as *NextEra Energy Global Holdings B.V. v. Kingdom of Spain*, No. 19-cv-01618. No. 23-7032 was previously before the district court as *9REN Holding S.À.R.L. v. Kingdom of Spain*, No. 19-cv-01871. No. 23-7038 was previously before the district court as *Blasket Renewable Investments LLC v. Kingdom of Spain*, No. 1:21-cv-3249-RJL.

The following cases present the same or similar issues and involve the Kingdom of Spain:

- *InfraStructure Services Luxembourg SARL v. Kingdom of Spain*, No. 18-cv-1753-LLA-MAU (D.D.C.)

- *Novenergia II-Energy & Environment (SCA) v. Kingdom of Spain*, No. 18-cv-01148-TSC (D.D.C.)

- *RREEF Infrastructure (G.P.) Limited v. Kingdom of Spain*, No. 19-cv-03783-CJN (D.D.C.)

- *Watkins Holdings S.R.L. v. Kingdom of Spain*, No. 20-cv-01081-BAH (D.D.C.)

- *Infrared Environmental Infrastructure GP Ltd. v. Kingdom of Spain*, No. 20-cv-00817-JDB (D.D.C.)

- *Foresight Luxembourg Solar 1 S.A. R.L. v. Kingdom of Spain*, No. 20-cv-00925-TSC (D.D.C.)

- *Cube Infrastructure Fund Sicav v. Kingdom of Spain*, No. 20-cv-01708-LLA-MAU (D.D.C.)

- *BayWa R.E. AG v. Kingdom of Spain*, No. 22-cv-02403-APM (D.D.C.)

- *Hydro Energy 1, S.A.R.L. v. Kingdom of Spain*, No. 21-cv-02463-RJL (D.D.C.)

- *RWE Renewables GMBH v. Kingdom of Spain*, No. 21-cv-03232-JMC (D.D.C.)

- *Swiss Renewable Power Partners S.A.R.L. v. Kingdom of Spain*, No. 23-cv-00512-RJL (D.D.C.)

*/s/ Sally L. Pei*
Sally L. Pei

iii

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEFING

The Kingdom of Spain and Blasket Renewable Investments, LLC consent to, and NextEra Energy Global Holdings B.V. and NextEra Energy Spain Holdings B.V. do not oppose, the European Commission's participation as *amicus curiae*. Fed. R. App. P. 29; Cir. R. 29(b).

Pursuant to Circuit Rule 29(d), undersigned counsel for *amicus curiae* certifies that a separate brief is necessary. Under the EU Treaties, the Commission is responsible for ensuring the proper application of EU law. It is the institution authorized to represent the EU in judicial proceedings outside the EU. The Commission is therefore uniquely positioned to provide perspective and insight on the questions of EU law implicated by this dispute.

 */s/ Sally L. Pei*
Sally L. Pei

## STATEMENT OF AUTHORSHIP AND
## FINANCIAL CONTRIBUTIONS

No counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae*, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(e).

/s/ *Sally L. Pei*
Sally L. Pei

v

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES ............................................................. i

STATEMENT REGARDING CONSENT TO FILE
AND SEPARATE BRIEFING ................................................. iv

STATEMENT OF AUTHORSHIP AND
FINANCIAL CONTRIBUTIONS.............................................v

TABLE OF CONTENTS............................................................. vi

TABLE OF AUTHORITIES ...................................................... vii

GLOSSARY OF ABBREVIATIONS ....................................... ix

INTEREST OF *AMICUS CURIAE* ....................................... 1

ARGUMENT .................................................................................2

I.      Whether courts have jurisdiction over these cases under
        the FSIA's arbitration exception turns on a question of
        exceptional importance to the EU ................................................4

II.     Under the panel's reasoning, most modern investment treaties now
        constitute "agreements to arbitrate" for purposes of the FSIA ............9

III.    The panel's decision invites a deluge of award enforcement actions
        against EU Member States in this Circuit...............................................10

CONCLUSION...............................................................................13

CERTIFICATE OF COMPLIANCE ...................................... 14

CERTIFICATE OF SERVICE................................................... 15

# TABLE OF AUTHORITIES[*]

Page(s)

**U.S. Cases**

*Chevron Corp. v. Ecuador,*
   795 F.3d 200 (D.C. Cir. 2015)..............................................................6

*McKesson Corp. v. Islamic Republic of Iran,*
   672 F.3d 1066 (D.C. Cir. 2012).........................................................10

*Pao Tatneft v. Ukraine,*
   No. 17-cv-582, 2021 WL 5353024 (D.D.C. Oct. 18, 2021).............................12

*Stati v. Republic of Kazakhstan,*
   No. 14-cv-1638, 2020 WL 13144317 (D.D.C. May 18, 2020) ........................12

**Statutes and Rules**

28 U.S.C. § 1605(a)(6) ............................................................... 2-3, 7

Cir. R. 28 ...................................................................................i

Cir. R. 29 .................................................................................iv

Fed. R. Civ. P. 69 .......................................................................11

Fed. R. App. P. 29.....................................................................iv, v

**Treaties and International Agreements**

*Energy Charter Treaty and its Protocol on Energy Efficiency and
   Related Environmental Aspects, *adopted* Dec. 17, 1994, *entered into
   force* April 16, 1998, 2080 U.N.T.S 95 (1995) ...................................1, 3, 4, 5, 8

Treaty on European Union, Oct. 26, 2012, 2012 O.J. (C 326) 13 .......................1

---

[*] Authorities on which this brief chiefly relies are marked with an asterisk.

**European Union Cases**

*Republic of Moldova v. Komstroy LLC,* 2 Sept. 2021,
   EU:C:2021:655 ...................................................................5

*Slovak Republic v. Achmea BV,*
   6 March 2018, EU:C:2018:158 .........................................5

**Other Authorities**

2012 U.S. Model BIT ...................................................................9

Christopher Dugan, *Investor-State Arbitration* ................................9

Declaration on the legal consequences of the judgment of the Court of
   Justice in *Komstroy* and common understanding on the non-
   applicability of Article 26 of the Energy Charter Treaty as a basis
   for intra-EU arbitration, 26 June 2024, O.J. (L 2024/2121).........................5

How To Enforce a Court Decision, European Judicial Network ...................12

Investment Dispute Settlement Navigator,
   Investment Policy Hub, UNCTAD .................................11

International Investment Agreements Navigator,
   Investment Policy Hub, UNCTAD .................................10

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Commission | European Commission |
| EU | European Union |
| FSIA | Foreign Sovereign Immunities Act |
| UNCTAD | UN Conference on Trade and Development |

## INTEREST OF *AMICUS CURIAE*

The European Commission is an institution of the European Union, a treaty-based international organization comprising 27 Member States.[1] The Commission is independent and acts in the interests of the EU as a whole, not those of individual Member States. Under Article 17(1) of the Treaty on European Union, the Commission is responsible for, inter alia, representing the EU in proceedings outside the EU. The Commission submits this brief in this function on behalf of the EU.

The EU has a significant interest in these cases. Appellant in *Blasket* and Appellees in *9REN* and *NextEra* seek to enforce arbitral awards that EU companies subject to EU law obtained against Spain, an EU Member State, under the Energy Charter Treaty.[2] The Energy Charter Treaty is an investment-protection agreement conceived and negotiated by the EU in the early 1990s as part of the EU's external energy policy.

---

[1] The Member States are Austria, Belgium, Bulgaria, Croatia, Cyprus, the Czech Republic, Denmark, Estonia, Finland, France, Germany, Greece, Hungary, Ireland, Italy, Latvia, Lithuania, Luxembourg, Malta, the Netherlands, Poland, Portugal, Romania, Slovakia, Slovenia, Spain, and Sweden.

[2] Energy Charter Treaty and its Protocol on Energy Efficiency and Related Environmental Aspects, *adopted* Dec. 17, 1994, *entered into force* April 16, 1998, 2080 U.N.T.S 95 (1995).

The Court of Justice of the EU—the EU's highest judicial body—has confirmed that arbitration under the Energy Charter Treaty between a Member State and an investor of another Member State contravenes fundamental principles of EU law. Intra-EU arbitral awards like those at issue here are invalid and cannot be enforced anywhere in the EU.

The investors in these cases (and many others pending in the district courts) have unabashedly sought to evade EU law by pursuing enforcement of these awards in the United States—a strategy that the panel has allowed to proceed. In its panel-stage *amicus* briefs, the Commission explained the relevant EU legal principles and described the destabilizing effects that enforcement of intra-EU awards would have for the EU legal order. The Commission seeks here to reemphasize the exceptional importance to the EU of the questions these cases implicate, and to highlight the immediate practical consequences for EU Member States and for this Circuit that will likely follow if the panel decision remains undisturbed.

## ARGUMENT

These cases concern whether U.S. courts have jurisdiction under the Foreign Sovereign Immunities Act's arbitration exception, 28 U.S.C. § 1605(a)(6), to enforce arbitral awards rendered in favor of EU investors

against Spain, an EU Member State, by private tribunals convened pursuant to the Energy Charter Treaty, a multilateral agreement to which the EU and its Member States, as well as certain non-EU countries, are signatories. Jurisdiction under this exception requires the existence of an arbitration agreement. Deciding whether jurisdiction lies under § 1605(a)(6) therefore requires answering a question of exceptional importance to the EU: whether the Energy Charter Treaty contains any offer by the EU and its Member States to arbitrate disputes under that treaty with investors of other EU Member States.

Foundational EU law principles, enshrined in the EU Treaties themselves and confirmed on multiple occasions by the Court of Justice, establish that the answer to that question is no. The EU and 26 Member States have since formally and expressly reaffirmed that interpretation of the Energy Charter Treaty as it applies in intra-EU relations; no non-EU contracting party to that treaty has disputed it.

Yet the panel declined to give effect to this settled understanding. Instead, even as it recognized the importance of the issue to the EU, *see* Op. 39, the panel tried to sidestep it. Rather than address whether Spain and the investors could have entered into any agreement to arbitrate under the

3

Energy Charter Treaty, the panel held that "the Energy Charter Treaty itself" constituted a completed arbitration agreement "for the benefit of private parties" sufficient for purposes of the FSIA. Because Spain did not dispute that it had consented to arbitrate with "the investors of at least some of the other [non-EU] signatory nations," the panel reasoned, whether any arbitration agreement between Spain and the particular investors here existed was irrelevant for jurisdiction. That was instead a question for the merits, on which the panel "t[ook] no position." Op. 29.

The European Commission respectfully urges the full Court to rehear these cases, which necessarily implicate a question of extraordinary importance to the EU. The panel's misguided attempt to skirt this critical issue will have significant and immediate implications for the entire Circuit, which will become the forum of choice for investors seeking to enforce intra-EU arbitral awards.

## I.    Whether courts have jurisdiction over these cases under the FSIA's arbitration exception turns on a question of exceptional importance to the EU

Article 26 of the Energy Charter Treaty contains a standing offer from the EU and its Member States to arbitrate disputes with "an Investor of another Contracting State." It is beyond dispute that, under EU law, that offer

4

does not extend to investors of EU Member States. That fact, as the Court of Justice has clearly held, is a necessary consequence of fundamental EU law principles that ensure the integrity of the judicial system and the uniformity of EU law. *See Republic of Moldova v. Komstroy LLC*, 2 Sept. 2021, EU:C:2021:655 ¶¶ 42-66; *Slovak Republic v. Achmea BV*, 6 March 2018, EU:C:2018:158, ¶¶ 31-60; *see also* Eur. Comm'n *NextEra* Amicus Br. 14-21.

To reaffirm that fact, particularly for the benefit of tribunals that appear to consider themselves not bound by Union law, the EU and 26 Member States (including Spain and the home countries of the investors in these cases) have jointly declared their "common understanding" that "Article 26 of [the Energy Charter Treaty] cannot and never could serve as a legal basis for intra-EU arbitration proceedings." Declaration on the legal consequences of the judgment of the Court of Justice in *Komstroy* and common understanding on the non-applicability of Article 26 of the Energy Charter Treaty as a basis for intra-EU arbitration, 26 June 2024, O.J. (L 2024/2121); *see* Op. 40. No non-EU signatory to the Energy Charter Treaty has disputed this interpretation.

For purposes of these cases, the proposition that settled EU law precludes Spain from offering to arbitrate with EU investors forecloses jurisdiction under the FSIA's arbitration exception. As this Court has held,

5

"[i]f there is no arbitration agreement … the District Court lacks jurisdiction over the foreign state and the action must be dismissed." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015); *see* Op. 20. Under EU law (which governs the capacity of Spain, an EU Member State, to contract with EU nationals), Spain could never have offered to arbitrate disputes with the investors here. No agreement to arbitrate disputes with these investors could ever have been formed, which precludes jurisdiction under the arbitration exception.

The panel recognized that the existence of a valid arbitration agreement is a jurisdictional fact that must be established. The panel acknowledged vigorous controversy between the parties about whether an agreement between Spain and the investors existed. The panel further observed that the Court of Justice of the EU has issued "two landmark decisions that call[] into question the validity of the underlying arbitration agreements." Op. 10; *see also* Op. 24.

But the panel refused to give effect to those "landmark decisions" of the Court of Justice. Instead, it evaded the central question. The panel reasoned that it did not need to decide whether Spain had entered into an arbitration agreement *with* the investors at all. Jurisdiction under § 1605(a)(6), the panel

held, could instead be based on "the Energy Charter Treaty itself," which the panel decided is "an arbitration agreement … that is *arguably* for th[eir] benefit" —i.e., for the benefit of the investors here. Op. 24-25 (emphasis added; brackets in original).

That is not the standard. The FSIA's arbitration exception confers jurisdiction over an action to "confirm an award made pursuant to" "an agreement made by the foreign state *with or for the benefit of a private party* to submit to arbitration all or any differences which have arisen or which may arise *between the parties* with respect to a defined legal relationship … ." 28 U.S.C. § 1605(a)(6). Absent an agreement made by the foreign state directly "with" the private party that obtained the award at issue, the court must find that the foreign state made an agreement "for the benefit of" that party, not just "arguably for its benefit."

Regardless, the panel did not explain how it had concluded that the Energy Charter Treaty was "arguably for the[] benefit" of the investors here. Op. 24-25. The panel simply noted Spain's consent to arbitrate disputes with "the investors of at least some of the other signatory nations," Op. 25, and decided that it could "bas[e] jurisdiction on the Energy Charter Treaty as an agreement 'for the benefit of' foreign investors." Op. 28. Spain may indeed

have made a standing offer to investors of non-EU signatory states to enter into an arbitration agreement. But that does not demonstrate that Spain entered into an arbitration agreement for the benefit of any investor, and in any event, not for the benefit of the investors here.

The panel's silence was especially conspicuous given its express acknowledgement of Spain's position that under EU law, the Energy Charter Treaty was made "for the benefit" of some investors, but not those within the EU. Op. 25. The panel never explained why Spain's argument—which, again, is firmly grounded in settled EU law and unambiguous pronouncements from the EU's highest court—had to be discarded. Instead, through sleight of hand, the panel deferred this critical question to the "merits." The panel claimed that its holding was limited because it was "not address[ing] the merits question whether that Treaty's arbitration provision extends to EU nationals and thus whether Spain ultimately entered into legally valid agreements with the companies." Op. 28; *see also* Op. 29. But whether the standing offer to enter into an arbitration agreement, made by the EU and EU Member States in Article 26 of the Energy Charter Treaty, was "for the benefit of" the investors here *also* depends on whether that offer extends to EU nationals.

The Commission respectfully submits that the full Court should rehear

the cases to give proper consideration to the core issues of treaty interpretation and EU law that they present. Addressing these issues, which are of extraordinary importance to the EU legal order, is a necessary and unavoidable step in the jurisdictional inquiry under the FSIA.

**II.    Under the panel's reasoning, most modern investment treaties now constitute "agreements to arbitrate" for purposes of the FSIA**

The panel sought to minimize the impact of its decision by asserting that "not all investment treaties 'supply the requisite state consent to arbitration'" and pointing to the 1979 Sweden-Malaysia bilateral investment treaty as a contrary example. Op. 28. But even the source on which the panel relied correctly notes that treaties that contain a "mere agreement to agree," rather than completed consent, are today the exception, rather than the rule: "[i]n most modern investment protection treaties, contracting states expressly consent to the mandatory submission of certain investment disputes to arbitration … ." Christopher Dugan, *Investor-State Arbitration* 236 (2008). The 2012 U.S. Model BIT follows this pattern, *see* U.S. Model BIT, Art. 25, as do those of numerous other countries, as well as those of the EU.[3]

---

[3] Model investment agreements can be found on the UN Conference on Trade and Development (UNCTAD) website. International Investment Agreements Navigator, Investment Policy Hub, UNCTAD, https://bit.ly/4dbrv2b.

Under the panel's reasoning, most of these international investment treaties (which number in the hundreds), in and of themselves, now constitute valid "agreements to arbitrate" for purposes of the FSIA, even without a showing that the foreign state consented to arbitrate with the investor that is seeking to hale it into federal court.

The FSIA's exceptions to immunity are "narrowly drawn." *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1075 (D.C. Cir. 2012). But by applying the FSIA to allow investors to hale a foreign sovereign into federal court without demonstrating that the sovereign actually consented to arbitrate with those particular investors, the panel decision has announced a rule that sweeps far more broadly than the panel itself acknowledged, extending to hundreds of other international treaties. This is a matter of such import that the full Court should consider it.

### III.   The panel's decision invites a deluge of award enforcement actions against EU Member States in this Circuit

As a result of the panel's decision, district courts in this Circuit now face a deluge of intra-EU award enforcement actions. Investment tribunals have issued more than 30 intra-EU awards against EU Member States under the

10

Energy Charter Treaty.[4] The sums at issue are staggering: the awards in these three cases alone total approximately 360 million euros. *See* Op. 14.

The Court of Justice has expressly held, in a series of rulings binding on the courts of all Member States, that fundamental EU-law principles—designed to safeguard the integrity of the EU legal order—not only foreclose Member States from removing EU-law disputes from the EU judicial system, but also require EU courts to refuse to enforce intra-EU arbitral awards. *See* Eur. Comm'n *NextEra* Amicus Br. 19-21. Put simply, intra-EU awards like the ones here are unenforceable anywhere in the EU.

Even before the panel's decision, the United States was an attractive forum for award-enforcement actions. Reducing an arbitral award to a U.S. judgment gives the award holder access to unusually powerful post-judgment discovery tools. *See* Fed. R. Civ. P. 69(a)(2). Courts in this Circuit have permitted litigants to obtain worldwide discovery into foreign sovereigns' assets. *E.g.*, *Pao Tatneft v. Ukraine*, No. 17-cv-582, 2021 WL 5353024 (D.D.C. Oct. 18, 2021); *Stati v. Republic of Kazakhstan*, No. 14-cv-1638, 2020 WL 13144317 (D.D.C. May 18, 2020). Many other legal systems allow asset

---

[4] UNCTAD maintains information about known investor-State cases. *See* Investment Dispute Settlement Navigator, Investment Policy Hub, UNCTAD, https://bit.ly/3Zqcvua.

searches only through bailiffs or governmental authorities, not through civil discovery. *See generally* How To Enforce a Court Decision, European Judicial Network, https://bit.ly/4dlMOOC.

By clearing the way for investors to seek to enforce awards issued in arbitral proceedings that—as the Court of Justice has confirmed, and the investors' own home states agree—could not have been based on valid consent, the panel's decision further highlights this Circuit as the forum of choice for award-enforcement actions. Most of the known intra-EU awards against States are already the subject of enforcement actions here;[5] at least twelve district judges in this Circuit have one or more such cases pending before them. These actions have been stayed, pending either resolution of proceedings elsewhere to annul the underlying award, or this Court's determination on the threshold immunity question. Each of these actions will proceed to the merits individually if the panel decision stands. Another several dozen intra-EU Energy Charter Treaty cases are still in the arbitration phase;

---

[5] Beyond those listed on pages ii-iii, numerous actions are pending against other Member States. *E.g.*, *CEF Energia B.V. v. Italian Republic*, No. 1:19-cv-3443-CKK; *Greentech Energy Sys. a/s v. Italian Republic*, No. 1:19-cv-3444-CKK; *MOL Hungarian Oil and Gas plc v. Republic of Croatia*, 1:23-cv-218-RDM; *Mercuria Energy Group v. Republic of Poland*, No. 1:23-cv-3572-TNM; *ACF Renewable Energy Ltd. v. Republic of Bulgaria*, No. 1:24-cv-1715-DLF.

12

any awards rendered in investors' favor in those cases, too, are highly likely to make their way to this Circuit. The full Court should decide whether to open the floodgates.

## CONCLUSION

Spain's petition for rehearing en banc should be granted.

Dated:  September 23, 2024

Respectfully submitted,

/s/ *Sally L. Pei*
Sally L. Pei
R. Stanton Jones
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
sally.pei@arnoldporter.com
stanton.jones@arnoldporter.com

*Counsel for Amicus Curiae*
*the European Commission*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because this brief contains 2,591 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using Microsoft Office 365 in 14-point Century Expanded BT font.

Dated:  September 23, 2024          _/s/ Sally L. Pei_____
                                                          Sally L. Pei

14

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated:  September 23, 2024                    /s/ *Sally L. Pei*
                                                                  Sally L. Pei

15